**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RYAN BARRETT,<br><br>*Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA FIRE AND EMERGENCY MEDICAL SERVICES, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-01075 (AHA) |

**Memorandum Opinion and Order**

Ryan Barrett alleges he is deaf and that various medical providers violated federal and local laws by not providing him with American Sign Language ("ASL") interpretation or other effective communication means during a medical emergency and also by detaining, physically restraining, and medicating him against his will. Barrett sues George Washington University Hospital as well as the Psychiatric Institute of Washington and associated entities. The court concludes it lacks personal jurisdiction over two of those associated entities, Universal Health Services, Inc. and UHS of D.C. Inc., and dismisses the claims against them. The court grants in part and denies in part the remaining defendants' motion to dismiss.

## I. Background[1]

Barrett was born deaf, and his primary language is ASL. ECF No. 10 ¶ 9. He requires ASL interpretation for effective communication, including in the context of medical care, legal issues,

[1] As required at this stage, the court accepts the amended complaint's well-pled allegations as true and draws all reasonable inferences in Barrett's favor. *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

and any other complex interactions. *Id.* ¶ 10.

One evening in May 2024, Barrett consumed legally purchased psilocybin mushrooms at home as part of "a personal wellness exploration." *Id.* ¶ 22. He became anxious and disoriented, and a housemate called for emergency help. *Id.* When emergency personnel arrived, they found Barrett rolling on the ground. *Id.* ¶ 24. Without ascertaining how to effectively communicate with Barrett, police officers restrained Barrett, and responders administered a sedative to him. *Id.* ¶¶ 24–26. The responders then took Barrett to the George Washington University ("GW") Hospital emergency room. *Id.* ¶ 28.

When Barrett arrived, the hospital incorrectly characterized him as "hard of hearing," not deaf. *Id.* Without trying to get Barrett's consent, Hospital staff administered various medications. *Id.* ¶ 29. And without explanation, they put Barrett in four-point hard locking restraints. *Id.* ¶ 30. Barrett tried to sign and convey he is deaf to the hospital's staff, but they recorded his efforts as "agitation" and "screaming." *Id.* ¶ 32.

Despite Barrett's efforts to convey that he is deaf and ask for ASL interpretation, hospital staff did not try interpretation services until almost three hours after Barrett was admitted, using a remote video system. *Id.* ¶ 33. The video was poor quality and largely ineffective because of pauses, disconnections, and improper positioning. *Id.* Barrett tried to calmly describe his medical history, the events of the evening, and other concerns, but hospital staff did not use effective interpretation and treated his communication attempts as "non-compliance." *Id.* ¶¶ 34–35.

The hospital then started involuntary commitment proceedings without meaningfully explaining to Barrett the justification, the process, or his rights. *Id.* ¶ 37. The hospital conducted psychiatric evaluations without a qualified interpreter, and its staff mistakenly understood Barrett's confusion as indication of severe mental illness. *Id.* ¶ 39. After the evaluations, the hospital

transferred Barrett to the Psychiatric Institute of Washington ("PIW") for involuntary commitment. *Id.* ¶ 40.

Barrett spent four days in involuntary commitment, during which PIW staff did not arrange qualified ASL interpretation services, even though they knew Barrett was deaf. *Id.* ¶ 41 (alleging PIW "staff recorded his Deaf status in his intake records"). PIW staff instead tried lip-reading, gestures, written notes, and talking loudly to communicate Barrett's psychiatric status and treatment plan, which did not work. *Id.* ¶ 42. When Barrett tried to use ASL or ask for an interpreter, PIW staff treated him as non-compliant. *Id.* ¶ 45. The complaint alleges this approach led to flawed psychiatric evaluations, proceeding without Barrett's consent, excluding him from therapeutic programs, and detaining him for a prolonged period against his will. *Id.* ¶¶ 43–44, 49.

Barrett sued GW Hospital, PIW, UHS of Delaware, Inc. ("UHSD"), Universal Health Services, Inc. ("UHSI"), and UHS of D.C. Inc. ("UHSDC"), seeking damages and injunctive relief under the Patient Protection and Affordable Care Act ("ACA"), the Rehabilitation Act, and the D.C. Human Rights Act. *Id.* ¶¶ 62–113. UHSI and UHSDC move to dismiss for lack of personal jurisdiction. ECF No. 14. GW Hospital, PIW, and UHSD move for partial dismissal of Barrett's claims for lack of subject matter jurisdiction and failure to state a claim. ECF No. 15.

## II. Discussion

The court starts with UHSI and UHSDC's arguments that it lacks personal jurisdiction over them. The court then considers UHSD, GW Hospital, and PIW's arguments that Barrett lacks standing to seek injunctive relief under any of his claims and does not state a claim for emotional distress damages or expectation damages under the ACA and Rehabilitation Act.

### A. The Court Lacks Personal Jurisdiction Over UHSI And UHSDC

The court agrees it does not have personal jurisdiction over UHSI and UHSDC. To survive dismissal under Federal Rule of Civil Procedure 12(b)(2), "a plaintiff must make a *prima facie*

showing of the pertinent jurisdictional facts." *First Chi. Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). The D.C. Circuit has instructed that "[c]onclusory statements" are not enough. *Id.* To make this prima facie showing, "plaintiffs are not limited to evidence that meets the standards of admissibility." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005). "Rather, they may rest their argument on their pleadings, bolstered by such affidavits and other written materials as they can otherwise obtain." *Id.* The court resolves all "factual discrepancies appearing in the record" in favor of the plaintiff. *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

The Supreme Court has recognized two routes for personal jurisdiction in a civil case like this: general jurisdiction, where the defendant is "essentially at home" and the court can hear "any and all claims" against them, and specific jurisdiction, which allows jurisdiction over a party "less intimately connected with a State" if there is "an affiliation between the forum and the underlying controversy." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021). Barrett tries both routes to argue this court has personal jurisdiction over UHSI and UHSDC, but neither gets him there. *See* ECF No. 18 at 4–5.

The court would have general jurisdiction "to hear any and all claims against" UHSI and UHSDC if their connections to D.C. were "so constant and pervasive 'as to render [them] essentially at home'" here. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The "paradigm bases for general jurisdiction" are a company's place of incorporation and principal place of business. *Id.* at 137 (cleaned up); *see also* D.C. Code § 13-422 ("A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."). Barrett

does not allege that UHSI is incorporated or has a principal place of business in D.C. To the contrary, he alleges UHSI is a "Delaware corporation" that is "headquartered" in Pennsylvania. ECF No. 10 ¶ 17. And although Barrett does assert that UHSDC "maintains a principal office" in D.C., he offers no response to the declaration UHSDC has proffered saying it is incorporated in Delaware, its principal place of business is in Pennsylvania, and it has no office or mailing address in D.C. ECF No. 14-2 ¶¶ 4, 13; ECF No. 18 at 4; *see* ECF No. 10 ¶ 14. On this record, Barrett has not shown that UHSI and UHSDC are "essentially at home" in D.C. to support general jurisdiction. *Daimler*, 571 U.S. at 122.[2]

Barrett also has not established a basis for exercising "specific or conduct-linked jurisdiction" over UHSI or UHSDC. *Urquhart-Bradley v. Mobley*, 964 F.3d 36, 44 (D.C. Cir. 2020). Barrett argues that UHSI and UHSDC fall within D.C.'s long-arm statute, which authorizes jurisdiction over a defendant "transacting any business in the District of Columbia" or "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(1), (4). Even if the terms of the long-arm statute have been satisfied, the court must still consider whether UHSI and UHSDC have the requisite

---

[2] Barrett argues that UHSDC's business registration in D.C. is enough for general jurisdiction over UHSDC and UHSI, citing *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023). ECF No. 18 at 4. In *Mallory*, the Supreme Court held that a state could require a foreign corporation to consent to general personal jurisdiction in that state as a condition of registering to do business there. 600 U.S. at 134–38. But Barrett makes no argument that D.C. does so. *See Huynh v. Air Can.*, No. 24-cv-476, 2025 WL 522053, at 2 n.3 (D.D.C. Feb. 18, 2025) (rejecting an argument that the defendant consented to jurisdiction because the plaintiff did "not so much as allege that the District of Columbia has a consent-to-jurisdiction statute in force," and "indeed, it does not: the D.C. Code's general jurisdiction provision reflects only the ordinary general jurisdiction principles articulated in *Daimler* and *Goodyear*").

"minimum contacts" with D.C., such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To satisfy this standard, "there must exist a relationship among the defendant, the forum, and the litigation such that the defendant's suit-related conduct creates a substantial connection with the forum." *Urquhart-Bradley*, 964 F.3d at 44 (cleaned up).

Barrett focuses on subsection (a)(1) of the long-arm statute, which authorizes jurisdiction over a defendant who transacts business in D.C. *See* D.C. Code § 13-423(a)(1). He argues that UHSI and UHSDC transact business in the district by operating healthcare facilities here. ECF No. 18 at 6–7. But the complaint offers only conclusory allegations of UHSI's and UHSDC's operational control, which are not enough to support Barrett's argument. *See* ECF No. 10 ¶ 14 (alleging UHSDC "exercises operational control and management authority over DHP and GW Hospital, including but not limited to its budget, human resources, compliance, policies, and procedures"); *id.* ¶ 18 (alleging UHSI "directly and/or through its . . . subsidiaries and its operational control thereof, is responsible for establishing and implementing institutional policies governing patient care, staffing, training, and accessibility practices at both GW Hospital and PIW"); *First Chi. Int'l*, 836 F.2d at 1378 (explaining that "[c]onclusory statements" cannot "constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction"). What's more, those conclusory statements are contradicted by unrebutted evidence that UHSI and UHSDC are holding companies that conduct no business operations. ECF No. 14-2 ¶¶ 5, 9. The companies have no employees, do not provide healthcare services, and are not involved in the day-to-day operation of, or patient treatment at, GW Hospital or PIW. *Id.* ¶¶ 11, 15–16. Neither company maintains an office in D.C. or owns or leases the real estate where GW

Hospital or PIW are located. *Id.* ¶¶ 12–14. UHSI and UHSDC also do not dictate staffing levels at GW Hospital or PIW and do not hire, train, supervise, or terminate GW Hospital or PIW employees. *Id.* ¶ 18; *see Vasquez v. Whole Foods Mkt., Inc.*, 302 F. Supp. 3d 36, 49–51 (D.D.C. 2018) (concluding the court lacked personal jurisdiction over holding company under subsection (a)(1) of D.C.'s long-arm statute because the complaint's "vague" factual allegations did not support that the holding company operated stores in D.C. and the plaintiff did not "provide specific facts to contradict" the holding company's declaration indicating it did "not own or operate any stores in the District of Columbia").[3]

Without plausible allegations or evidence of operational involvement, Barrett points to various other things to argue the court has personal jurisdiction over UHSI based on its transacting of business within D.C. Some are documents or actions that are consistent with it being a parent company, like agreements that impose general oversight obligations over subsidiaries or corporate restructuring agreements that include D.C. entities, indications of funding to subsidiaries, or acknowledgment of subsidiaries on websites. *See* ECF No. 18 at 7–12; ECF Nos. 19-4, 19-5, 19-7, 19-10. Barrett also points to contracts in which UHSI has agreed to be sued in D.C. and pending D.C. litigation involving UHSI. *See* ECF No. 18 at 8; ECF No. 19-6 ¶ 8. These materials, too, are

---

[3] Barrett says past court opinions confirm UHSI and UHSDC have operational control over GW Hospital. *See* ECF No. 18 at 6–7. But the National Labor Relations Board decision he points to does not contain the language he quotes or make any conclusions as to the operational control of UHSI or UHSDC. *See Dist. Hosp. Partners, L.P.*, 373 N.L.R.B. No. 55, 2024 WL 2110452 (May 8, 2024). And the D.C. Circuit opinion he points to says that GW Hospital and UHSI "manage and operate a full-service acute care facility in Washington, D.C." *Dist. Hosp. Partners, L.P. v. Nat'l Lab. Rels. Bd.*, 141 F.4th 1279, 1285 (D.C. Cir. 2025). This statement, which is consistent with the notion that UHSI is a parent of entities that provide these services, does not stand in for plausible allegations or evidence that UHSI participates in the actual business operations of GW Hospital or PIW. *See Vasquez*, 302 F. Supp. 3d at 51 (concluding that a holding company's admission in an answer in an unrelated case that it "transacts business within the District of Columbia" was merely "an acknowledgment that the corporate entity as a whole operates stores in the District of Columbia, and no more").

consistent with UHSI's status as a holding company and do not show that UHSI transacts business in D.C. Moreover, courts have generally held this type of showing is not enough to supply the minimum contacts needed to support the exercise of personal jurisdiction. *See Lans v. Adduci Mastriani & Schaumberg L.L.P.*, 786 F. Supp. 2d 240, 275 (D.D.C. 2011) (explaining that the defendants' "participation in litigation-related activities alone also does not subject [them] to personal jurisdiction in the District of Columbia"); *Henley v. Biloxi H.M.A., LLC*, No. 19-cv-544, 2020 WL 13885387, at *7 (S.D. Miss. Sept. 8, 2020) (concluding a corporate integrity agreement requiring parent company to adopt policies and procedures concerning billing and reimbursement was "too broad to support the exercise of specific jurisdiction"); *Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, No. 18-cv-03587, 2019 WL 1560460, at *3, 9 (N.D. Cal. Apr. 10, 2019) (explaining that "a parent corporation's mere funding of a subsidiary corporation," including for the subsidiary to purchase smaller distributers in the forum state, was "insufficient to establish personal jurisdiction" over the parent); *Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 836–37 (D.S.C. 2015) (concluding the court lacked personal jurisdiction over holding company even where it "entered into a corporate integrity agreement in which it agreed to monitor" subsidiaries). And in any event, Barrett does not argue his claims are related to the documents, funding, or litigation he points to. *See Urquhart-Bradley*, 964 F.3d at 44 (requiring a "relationship among the defendant, the forum, and the litigation such that the defendant's suit-related conduct creates a substantial connection with the forum" (cleaned up)).

Barrett also relies on subsection (a)(4), which authorizes jurisdiction over a defendant who has committed acts or omissions outside of D.C. if the defendant has one of three enumerated contacts with the district—that is, the defendant regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from goods or services in D.C.

*See* D.C. Code § 13-423(a)(4). Barrett contends that UHSI derives substantial revenue from its D.C. operations, pointing to a press release summarizing UHSI's financial filings and a quarterly report acknowledging UHSI's subsidiary operations and revenue from D.C. ECF No. 18 at 8–9; *see* ECF Nos. 19-8, 19-9. But the evidence, which establishes that UHSI is a mere holding company, makes clear that any D.C. revenue is generated by UHSI's subsidiaries, not by UHSI. *See Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 33 (D.D.C. 2012) ("[I]t is widely acknowledged that consolidating the activities of a subsidiary into the parent's reports is a common business practice, and courts routinely find that such collective descriptions are insufficient to impute the contacts of a subsidiary to its corporate parent." (citations and quotation marks omitted) (collecting cases)); *Vasquez*, 302 F. Supp. 3d at 52 (rejecting personal jurisdiction based on subsection (a)(4) and reasoning that, to the extent a holding company "earns any revenue from the District, it does so only indirectly through the shares it holds in the subsidiary that owns and operates" the stores in D.C.). Indeed, both documents that Barrett points to expressly state that operations are conducted by subsidiaries, not UHSI itself. ECF No. 19-8 at 3 (press release stating that UHSI operates healthcare facilities "through its subsidiaries"); ECF No. 19-9 at 2 (quarterly report stating that "[a]ll healthcare and management operations are conducted by subsidiaries" and that any reference to "UHS", "UHS facilities," "we," "us," "our," or the "Company" relating to healthcare and management operations refers to the operations of UHSI's subsidiaries); *see also Vasquez*, 302 F. Supp. 3d at 51 (explaining the use of the word "we" in an SEC filing did not show the parent company had "direct control of stores" because consolidating the activities of subsidiaries into the parent's reports is "common business practice" and the filing "expressly noted" that "we" included subsidiaries).

As for UHSDC, Barrett asserts the court can exercise jurisdiction because it is a general partner of GW Hospital. ECF No. 18 at 12–14; *see* ECF No. 10 ¶ 14. But Barrett has not supported his conclusory statements that UHSDC exercises operational control over GW Hospital with sufficient factual allegations or evidence, and his bare assertions of management and control are not enough to overcome UHSDC's sworn affidavit indicating it does "not provide day-to-day operational management services or administrative services for" GW Hospital. ECF No. 14-2 ¶ 17; *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (explaining the requirement that a defendant has sufficient "ties to the forum . . . must be met as to each defendant over whom a . . . court exercises jurisdiction"). Accordingly, Barrett has not made a sufficient factual showing to permit the exercise of personal jurisdiction over UHSDC.

Barrett also argues the court can exercise personal jurisdiction over UHSI as "a principal" based on the activities of its "agent" subsidiaries. ECF No. 18 at 14–15; *see Khatib*, 846 F. Supp. 2d at 32. In particular, Barrett argues that UHSDC's contacts with D.C. should be imputed to UHSI. But, as explained above, UHSDC lacks sufficient contacts with D.C. for the exercise of personal jurisdiction. And even if that were not the case, courts have recognized that "all corporations must necessarily act through agents," and therefore the contacts of a subsidiary are imputed to a parent for purposes of personal jurisdiction only when the subsidiary's activities are "of such a character as to amount to doing business of the parent." *Khatib*, 846 F. Supp. 2d at 32 (quoting *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962)). That requires "a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative perform them, the corporation's own officials would undertake to perform substantially similar services." *Id.* "Courts are in agreement that, as a general rule, it is generally

improper to impute the contacts of a subsidiary to a corporate parent that is a holding company because the subsidiary is not performing a function that the parent would otherwise have to perform itself (the holding company could simply hold another type of subsidiary)." *Id.* at 33 (quotation marks omitted) (collecting cases). Here, Barrett does not allege any facts that would suggest that UHSI's D.C. subsidiaries are "performing a function that" UHSI "would otherwise have to perform itself." *Id.* Accordingly, Barrett has not made a sufficient showing to permit the exercise of personal jurisdiction over UHSI.[4]

### B. Barrett Does Not Have Standing To Seek Injunctive Relief

All of Barrett's claims ask for injunctive relief, but the court agrees with the defendants that he does not have standing for that. *See* ECF No. 10 ¶¶ 84, 96, 104, 111. To survive dismissal for lack of subject matter jurisdiction, Barrett must show this court has subject matter jurisdiction to hear his claims, which includes showing he has standing to pursue them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And he must "demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000). The court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived

---

[4] On this record, the court finds Barrett has not made the requisite showing for jurisdictional discovery, which requires "at least a good faith belief that such discovery will enable [him] to show that the court has personal jurisdiction over the defendant." *Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1090 (D.C. Cir. 1998). Barrett asserts he would seek discovery "to explore the full extent of UHSI's control over its D.C. subsidiaries, including financial oversight, approval of major operational decisions, and the day-to-day reporting structure between the D.C. entities and the Pennsylvania headquarters," ECF No. 18 at 18, but he does not offer the sort of "detailed showing of what discovery [he] wishes to conduct or what results [he] thinks such discovery would produce" that would warrant jurisdictional discovery. *United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 130 n.16 (D.D.C. 2000). And none of the discovery Barrett seeks to propound relates to the specific events and injuries alleged such that he might be able to show that his claims arise out of UHSI's and UHSDC's contacts with D.C.

from the facts alleged,' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To show Article III standing at this stage, Barrett must plausibly allege he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). When, as here, a plaintiff "seeks prospective . . . injunctive relief, he must establish an ongoing or future injury that is 'certainly impending'; he may not rest on past injury." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). In other words, "[b]ecause injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to merely conjectural or hypothetical—threat of future injury." *Citizens for Resp. & Ethics in Wash. v. SEC*, 858 F. Supp. 2d 51, 58 (D.D.C. 2012) (quoting *Nat. Res. Def. Council v. Pena*, 147 F.3d 1012, 1022 (D.C. Cir. 1998)).

Barrett's complaint asks for prospective injunctive relief, but his allegations are limited to past injury and contain no indication of a future injury, let alone a "certainly impending" one. *Arpaio*, 797 F.3d at 19 (quoting *Clapper*, 568 U.S. at 409). The complaint alleges Barrett was denied ASL interpretation or other effective accommodations while being treated by emergency personnel, GW Hospital, and PIW but does not allege that Barrett plans to seek emergency services or return to GW Hospital or PIW. To the contrary, he alleges a "heightened distrust of healthcare settings, causing him to delay or avoid seeking necessary treatment for fear of experiencing similar violations." ECF No. 10 ¶ 59. Barrett alleges only "[p]ast exposure to illegal conduct" and not a "real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102

(1983). Barrett therefore does not plausibly allege an injury in fact sufficient to give him standing to seek prospective injunctive relief.

### C. Barrett May Not Recover Emotional Distress Damages Under His ACA Or Rehabilitation Act Claims But May Proceed To Prove Expectation Damages

Barrett seeks both emotional distress damages and expectation damages under the ACA and the Rehabilitation Act, and the defendants move to dismiss both types of relief. Their argument is well taken as to emotional distress damages. The Supreme Court has held that private individuals seeking relief under Spending Clause antidiscrimination laws like the ACA and the Rehabilitation Act are limited to traditional contract remedies, and "emotional distress damages are not recoverable." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 230 (2022). Barrett offers no persuasive reason why that does not control here. He attempts to distinguish *Cummings* on various grounds, but *Cummings* involved a plaintiff who sued under the ACA and the Rehabilitation Act, alleging the defendant's "failure to provide an ASL interpreter constituted discrimination on the basis of disability." *Cummings*, 596 U.S. at 217. Its holding squarely controls Barrett's claims under those same statutes. Barrett therefore may not recover emotional distress damages under his ACA and Rehabilitation Act claims. *See Inko-Tariah v. Budweiser Brew House*, No. 22-7160, 2023 WL 8351588, at *1 (D.C. Cir. June 20, 2023) (per curiam) (explaining that "damages for emotional distress are not allowed under the Rehabilitation Act"); *Montgomery v. District of Columbia*, No. 18-cv-1928, 2022 WL 1618741, at *26 (D.D.C. May 23, 2022) (stating "*Cummings* explicitly precludes recovery for emotional distress damages").

Barrett's request for expectation damages, on the other hand, is not foreclosed, and the court will allow Barrett the opportunity to prove them. Contrary to the defendants' argument, Barrett's request for expectation damages is not merely a rebranding of his request for emotional distress damages. The complaint alleges Barrett had an "expectation interest in being able to

communicate with and be informed about his care by Defendants' staff in his primary or preferred language or through some other equally effective form of communication." *See* ECF No. 10 ¶¶ 82, 102. And the defendants do not dispute that expectation damages are traditionally available for contract claims and therefore remain recoverable under the Rehabilitation Act and the ACA even after *Cummings*. ECF No. 21 at 14. To be sure, Barrett will be required to prove such damages with reasonable certainty, and the defendants argue that may be difficult to do in the context of medical care. *Id.*; *see Nieves v. Plaza Rehab. & Nursing Ctr.*, No. 20-cv-01191, 2023 WL 4763945, at *9 (S.D.N.Y. July 26, 2023) (concluding, at the summary judgment stage, that the plaintiff was "precluded from seeking expectation damages" because he "offered merely broad strokes about his expectation interest in his ability to participate in his medical care" and "has not pointed to any evidence in the record that could permit a jury to conclude, with reasonable certainty, that he is entitled to expectation damages"). The court concludes the complaint plausibly alleges such damages and will therefore allow Barrett the opportunity to prove them.

## III. Conclusion

For these reasons, the court grants UHSI and UHSDC's motion to dismiss, ECF No. 14, and grants in part and denies in part UHSD, GW Hospital, and PIW's partial motion to dismiss, ECF No. 15. Barrett's claims under the ACA, the Rehabilitation Act, and the D.C. Human Rights Act will proceed, but Barrett may not seek emotional distress damages under the ACA or Rehabilitation Act or injunctive relief under any claim.

AMIR H. ALI
United States District Judge

Date: September 17, 2026